DECISION
Plaintiff appeals the Yamhill County Board of Property Tax Appeals Order, dated March 18, 2009, reducing the 2008-09 real market value of property identified as Account 541759 (subject property). A trial was held in the Oregon Tax Courtroom, Salem, Oregon, on December 6, 2010. Jodi Bradley (Bradley), Appraiser II, Yamhill County Assessment and Taxation, and Oregon certified appraiser, appeared and testified on behalf of Plaintiff. Brett Veatch (Veatch), Real Estate Broker, appeared and testified on behalf of Defendant.
Plaintiff's Exhibits 1 through 12, 15, and 16 were admitted without objection. Defendant's Exhibits A and B were admitted with objection. Defendant's Exhibits C, D, E, and F were admitted without objection.
 I. STATEMENT OF FACTS
Bradley testified that the subject property, a one-acre parcel located in a platted subdivision, along with 40 other land parcels developed by Ralph Johnson (Johnson) who was granted "a Measure 37 waiver." (Ptf's Summ of Case at 1.) Yamhill County Board of Commissioners Board Order 05-590 stated:
 "Claimant is authorized to make application to divide the subject property into one acre lots and build a single family dwelling on each undeveloped lot, a use permitted on the subject property at the time claimant acquired the property." *Page 2 
(Ptf's Ex 2 at 2.) In its approval of the subdivision, the Yamhill County Department of Planning and Development required that the "following language shall be placed on the face of the final plat:
 "Lots shown on this plat were authorized by waivers of land use regulations by Yamhill County and the State of Oregon pursuant to ORS 197.352, 2005 replacement part (Measure 37). * * * Yamhill County makes no representations or warranties as to the transferability of the lots or any development rights related to the lots."
(Def's Ex 4 at 2.)
Bradley testified that the subject property was purchased by Defendant's brother, who paid $112,500. The statutory warranty deed transferring title to Defendant's brother was recorded on October 31, 2007, and rerecorded on December 7, 2007, to correct an error. (Ptf's Summ of Case at 3; Ptf's Ex 7 at 1.) According to Bradley, "on December 10, 2007 a Certificate of Occupancy was issued for dwelling improvements on [the subject property]." (Ptf's Summ of Case at 1.) Four days prior to the date the Certificate of Occupancy was issued, "Measure 49 went into effect." (Id. at 3.)
Bradley testified that, as of January 1, 2008, the one-acre lots in the same subdivision as the subject property were advertised for sale on a website. (Ptf's Ex 9.) She testified that there were four sales in 2007 transacted by the developer to "generate working capital." Bradley testified that those sales were not "arm's length" because those sales reflect the "minimum compensation the seller would accept for those lots." She testified that two lots were sold to one individual and Plaintiff's brother purchased two lots, selling on lot to Defendant. Bradley testified that the listing prices ranged from $234,900 to $699,900. (Id. at 4, 5.) Bradley testified that Lots 20 and 21 included "replacement dwelling permits in their price structure" and stated that the subject property also included a replacement dwelling permit. (Id. at 5.) Veatch *Page 3 
responded that the subdivision owner kept the lots listed on the advice of his counsel and he testified that there has been no "interest and no sales since January 2008."
Bradley testified that in June, 2008, Defendant purchased the subject property from his brother, paying $112,500. (Ptf's Summ of Case at 2.) Both parties agreed that this transaction between the brothers was not an arm's length transaction between a willing buyer and willing seller. Bradley characterized the sales as the "least amount the seller would consider." Bradley testified that the June 2008 title transfer between the brothers shows that, even after Measure 49 was enacted, title to the subject property was not "encumbered" and "easily transferrable." Defendant received a Single Family Replacement Dwelling permit on June 12, 2008. (Id.) Bradley testified that Defendant's permit is evidence that, as of that date, the property was "still buildable." She referenced the discussion at the Yamhill Board of Property Tax Appeals hearing, where others discussed the property, title transfer, and right to build on the property.
Bradley testified that she prepared a Comparable Sales Analysis. (Ptf's Ex 16.) She explained that the four comparable properties sold between January 2007 and October 2007 and are located between 2.92 miles and 5.8 miles from the subject property. (Id.) Bradley testified that she adjusted the sale price for date of sale, size, view, on-site development, and improvements. (Id. at 2.) She testified that she confirmed each sale. Based on the four adjusted sale prices, the "[c]ounty's opinion of value [was] based on median at $221,000 (rounded)." (Id.) Even though the comparable sales approach indicated a real market value of $221,200, Plaintiff requested that the court conclude that the 2008-09 subject property's real market value was $164,000. Bradley did not explain how she arrived at the requested value. Veatch's testimony challenged the comparability of the properties she selected to the subject property. *Page 4 
In response to Defendant's questions, Bradley testified that, in making the value determination, she concluded that there were no "clouds" on Defendant's title, there should be no adjustment for the county's temporary building moratorium, there were no other governmental restrictions on the subject property, and the subject property was "buildable." Bradley explained that the title had already been transferred "twice" and Measure 49 had "no effect on the property's value." The parties dispute whether there was a "legal" building moratorium in Yamhill County. Veatch alleges that there was no public hearing as "required by ORS 197.520" but there was a "governmental restriction" on the subject property "without the consent of Defendant." Bradley cited Baber v. CurryCounty Assessor (TC-MD No 020215A) (Dec 2002)) and stated that, because a building moratorium is in place, "it does not" necessarily "reduce a property's value." Veatch commented that theBaber court agreed that the "moratorium could have an effect on market value" but the property owner did not submit evidence showing that effect on his property's real market value. Veatch testified that the subject property was subject to Measure 49 and, "until the vesting decision was finalized and unappealed," title to the subject property was not "clear." He concluded that "title could be transferred" but with "a cloud."
Veatch referenced a memorandum issued by John M. Gray, Jr. (Gray), Yamhill County Counsel. (Def's Ex C.) In his memorandum, Gray wrote:
 "On December 19, 2007 the Board adopted Ordinance 823 to establish a process in Yamhill County for a Measure 37 claimant to obtain a final county vesting decision for purposes of Measure 49. A outcome favorable to the applicant under this process would allow the Planning Director to sign plats submitted after December 6, 2007 that resulted from Measure 37 waivers."
(Id. at 3.) Veatch referenced an email exchange between him and Mike Brandt, a Yamhill County employee, reciting the impact of Measures 37 and 49 on a replacement dwelling permit: *Page 5 
 "(5) That Yamhill County would allow a claimant to utilize a replacement dwelling permit which was obtained on a Measure 37 propert[y], if such was obtained prior to the effective date of Measure 49. However, that utilization of such a replacement permit would be at the owner's own risk and required the indemnification of Yamhill County."
(Def's Ex D at 1.)
Veatch submitted a letter from John L. Collins, Presiding Judge, Yamhill County Circuit Court, discussing transfer of non-transferable Measure 37 rights:
 "A use, however, completed prior to December 6, 2007, may be transferrable because it does not fall under Measure 49. But, as discussed above, the use was not completed
prior to that date in these cases, including the Johnson case which involves a transfer of some of the lots. The fact that individual lots can be transferred after plat approval, does not mean that the new owner has any vested right to use that lot or parcel in a nonconforming way.
(Def's Ex E at 2. (Emphasis in original.)) Judge Collins's letter cites Parks v. Tillammok County Commission,11 OR App 483 (1981), holding that a "`vested right' is an incomplete nonconforming use [and] [a] nonconforming use relevant here is a use that was lawful at the time the property was acquired — i.e., before the applicable zoning ordinance was enacted and effective." (Id.) Judge Collins concluded:
 "Stated otherwise, the landowners can only transfer what they have that is transferrable. If they have a Measure 37 waiver, it is not transferrable; therefore the transferee did not obtain it and can do no more than perhaps pitch a tent on the property."
(Id. at 3.)
Veatch testified that the "200 square foot structure on the subject property" has no "value as a residential structure" and there is no water, power or sewer. He testified that Defendant planned to, and in fact did, replace the 200 square foot structure with a residential structure and Defendant had to "indemnify" Plaintiff. Veatch testified that "conventional financing" to purchase the subject property or similar properties subject to Measure 49 was not "available." *Page 6 
To support his testimony, Veatch offered a letter from Western Title Escrow Company located in McMinnville, Oregon, stating:
 "As per our earlier conversation I have verified with our underwriters that around the date of January 2008 any measure 37/49 subdivision would have been able to obtain title insurance but would have had added deed language and an appropriate exception to the title policy. The language clearly states that the seller was retaining an interest in the property so for lending purposes the property would not have had clear title."
(Def's Ex F at 2.) Veatch referenced Plaintiff's Exhibit 15, which is an audio recording of the Board of Property Tax Appeals hearing of Defendant's petition. He recalled that Clayton Carter, an employee of First American Title, stated that the plat must be recorded "with a statement about the waiver" and a board member stating that the "effect of Measure 37/49 placed a cloud" on the title.
In arriving at his determination of the subject property's real market value, Veatch identified "four sales that were unbuildable at their time of sale[.]" (Def's Ex A at 3.) He concluded that, even though the "comparable properties were larger and capable of supporting other productive uses — farming, forestry, etc. — and subject property is not, [he] did not make any adjustment for this. Instead, it is [his] opinion that the market would receive all unbuildable parcels as generally the same." (Id.) Veatch testified that because the "sales dates of the comparable varied over a period of several years, [he] allowed * * * a generous appreciation rate of 50% to compensate for market appreciation which may have occurred." (Id. at 4.) He concluded by stating that:
 "Based on this information and my professional experience, it appears that a reasonable asking price range for the subject property as of January 1st, 2008 may have been $9,638 to $14,455."
(Id.) Veatch emphasized that "this is my professional opinion only based on my expertise in the local market. It does not constitute an appraisal nor should be used as one." (Id.) In response to *Page 7 
Bradley's question, Veatch testified that the comparable sales he selected were prior to the assessment date and the "Fall financial crisis." He stated that the subject property is "so significantly restricted" that it is "not a readily buildable property."
 II. ANALYSIS
The issue before the court is the 2008-09 real market value of Defendant's property. "Real market value is the standard used throughout the ad valorem statutes except for special assessments."Richardson v. Clackamas County Assessor, TC-MD No 020869D, WL 21263620, at *2 (Mar 26, 2003) (citing Gangle v. Dept. ofRev., 13 OTR 343, 345 (1995)). Real market value is defined in ORS 308.205(1), [1] which reads:
 "Real market value of all property, real and personal, means the amount in cash that could reasonably be expected to be paid by an informed buyer to an informed seller, each acting without compulsion in an arm's length transaction occurring as of the assessment date for the tax year."
There are three approaches of valuation (cost, income, and comparable sales) that must be considered in determining the real market value of a property even if one of the approaches is found to not be applicable. See ORS 308.205(2); OAR 150-308.205-(A)(2)(a). Neither party discussed the applicability of the cost or income approach.
In a case such as the one before the court, the comparable sales approach "may be used to value improved properties, vacant land, or land being considered as though vacant." Chambers Management Corpand McKenzie River Motors v. Lane County Assessor, TC-MD No 060354D at 6 (Apr 3, 2007), citing Appraisal Institute,The Appraisal of Real Estate 335 (12th ed 2001). Plaintiff relied on the comparable sales approach. Bradley selected four properties and adjusted each sale price for time, size, location, view, on-site development, and structure. She inspected each property and confirmed that the sale was arm's length. Even though she testified that the *Page 8 
subject property's real market value was not negatively impacted by the December 2007 enactment of Measure 49, Bradley concluded that the subject property's real market value was approximately 25 percent less than the indicated value of the four comparable sales. (Ptf's Ex 16 at 1.) Bradley did not explain or provide supporting evidence as to how she determined the 25 percent adjustment. Bradley offered no explanation of how and why she determined a real market value substantially less than the listing prices stated on the subdivision marketing website for land similar to the subject property close in time to the assessment date.
Veatch challenged the comparability of the properties Bradley selected to the subject property. Veatch concluded that the only properties comparable to the subject property were properties identified as "unbuildable." Veatch's conclusion was based on the enactment of Measure 49 and subsequent litigation occurring after the assessment date. Even though Measure 49 may have created a "cloud" as described by Veatch, a building permit was issued and Defendant now lives in the house he built on the subject property. Obviously, the subject property is not "unbuildable" and Defendant has determined that the negative consequence, if any, associated with Measure 49 will be realized in the future when or if he attempts to sell the subject property.
"In all proceedings before the judge or a magistrate of the tax court and upon appeal therefrom, a preponderance of the evidence shall suffice to sustain the burden of proof. The burden of proof shall fall upon the party seeking affirmative relief." ORS 305.427. Plaintiff must establish its claim "by a preponderance of the evidence, or the more convincing or greater weight of evidence."Schaefer v. Dept. of Rev., TC No 4530 at 4 (July 12, 2001) (citing Feves v. Dept. of Rev., 4 OTR 302 (1971)). Competent evidence includes appraisal reports, sales adjusted *Page 9 
for time, location, size, quality, and other distinguishing differences, and testimony from licensed professionals such as appraisers, real estate agents, and licensed brokers.
There is overwhelming evidence that, as of the assessment date, Measure 49 could affect a use that was not fully-developed under Measure 37. The parties discussed and submitted evidence showing that the subject property is located in a subdivision owned by an individual who was granted a Measure 37 waiver. Subsequent to the first title transfer of the subject property from the developer to Defendant's brother, Measure 49 was passed. According to Veatch, there have been no subsequent sales of lots in the subdivision where the subject property is located since the enactment of Measure 49. There was no evidence to the contrary. Veatch alleges that the lack of sales is directly tied to Measure 49. Bradley testified that Measure 49 had no effect on the subject property's real market value. Neither party submitted evidence to verify the Measure 49 effect, if any, on the subject property's real market value.
Legal uncertainties or other factors have resulted in neither party submitting any evidence of open-market sales of properties with similar Measure 37 waiver issues like the subject property. ORS 308.205(2) provides in pertinent part that "[r]eal market value in all cases shall be determined by methods and procedures in accordance with rules adopted by the Department of Revenue." The Department of Revenue adopted OAR 150-308.205-(A)(2)(c), stating that:
 "In utilizing the sales comparison approach only actual market transactions of property comparable to the subject, or adjusted to be comparable, will be used. All transactions utilized in the sales comparison approach must be verified to ensure they reflect arms-length market transactions."
Plaintiff's comparable market approach did not state whether the comparable properties like the subject property were authorized by waivers of land use regulations, commonly referred to as a Measure 37 waiver. Plaintiff made a reduction to real market value without any evidence to support the adjustment. The court has no way to measure whether that adjustment accurately *Page 10 
measures the impact of Measure 49. There is no verifiable evidence using one of the statutory valuation approaches, specifically the comparable sales approach selected by Plaintiff, for the court to consider in determining whether or not Measure 49 negatively impacted the subject property's real market value. Plaintiff failed to carry its burden of proof.
Even though Plaintiff failed to carry its burden of proof and the "burden of going forward with the evidence" has not shifted, the court has jurisdiction to determine the "real market value or correct valuation on the basis of the evidence pleaded by the parties." ORS 305.427; ORS 305.412. Defendant's evidence is insufficient for the court to make its own determination of real market value.
 III. CONCLUSION
After careful consideration of the testimony and evidence, the court concludes that Plaintiff failed to carry its burden of proof. Now, therefore,
IT IS THE DECISION OF THIS COURT that Plaintiff's appeal is denied.
Dated this ___ day of March 2011
If you want to appeal this Decision, file a Complaint in theRegular Division of the Oregon Tax Court, by mailing to:1163 State Street, Salem, OR 97301-2563; or by hand delivery to:Fourth Floor, 1241 State Street, Salem, OR.
 Your Complaint must be submitted within 60 days after the dateof the Decision or this Decision becomes final and cannot bechanged.
 This document was signed by Presiding Magistrate Jill A.Tanner on March 14, 2011. The Court filed and entered this documenton March 14, 2011.
[1] References to the Oregon Revised Statutes (ORS) are to year 2007. *Page 1